IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VICKI COUP,

             Plaintiff

   vs.

RYDER INTEGRATED LOGISTICS,
A/K/A RYDER

             Defendant

CIVIL ACTION – LAW

NO.

JUDGE:

ELECTRONICALLY FILED

JURY TRIAL DEMANDED

### Complaint

1.    Plaintiff, Vicki Coup ("Coup"), is an adult individual currently residing at P. O. Box 72, Laporte, PA, within the Middle District of Pennsylvania.

2.     Defendant, Ryder Integrated Logistics, a/k/a/ Ryder ("Ryder"), is a legal entity amenable to suit with a place of business located at 549 North Industrial Park Road, Milton, PA 17847 within the Middle District of Pennsylvania.

3.     This action is brought pursuant to the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq. ("ADA"), and the Pennsylvania Human Relations Act, Pa. Stat. Ann. Tit. 43, §§951, et seq. ("PHRA").

4.     This Court has jurisdiction over this case pursuant to 28 U.S.C. §§1331 and 1343.  This Court also has supplemental jurisdiction over Coup's state law claims pursuant to 28 U.S.C. §1367.

5.     Ryder is found doing business within the Middle District of Pennsylvania, and a substantial part of the events or omissions giving rise to the claim occurred within the Middle District of Pennsylvania.

6.     Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391.

7.     Coup was an employee and Ryder was her employer within the meaning of the ADA and the PHRA.

8.     Coup was employed by Ryder at its above-described Milton location beginning on or about August 6, 1984, and at all times relevant hereto was a

member of the United Foods & Commercial Workers union.

9.    Coup has a disability in the form of a phobia/panic attacks of entering long, dark enclosed spaces, such as trailers. These conditions substantially limit and/or limited several of Coup's major life activities, including but not limited to caring for herself, talking, thinking, concentrating, relating to others, breathing, and working.

10.    Coup's above conditions are disabilities within the meaning of the ADA and the PHRA.  In addition or in the alternative, Coup has a history of such disabilities and/or Ryder regarded Coup as having such disabilities.

11.    On June 21, 2017, the Pennsylvania Human Relations Commission ("PHRC") issued a Finding of Probable Cause, that "probable cause exists to support [Coup's] allegations that her accommodation request was denied and she was terminated [by Ryder] because of a disability, phobia/panic attacks of entering long, dark, enclosed spaces such as trailers, contrary to the dictates of...the Pennsylvania Human Relations Act."

12.    Coup has received a Notice of Right to Sue letter from PHRC and the United States Equal Employment Opportunity Commission ("EEOC"), and/or those

agencies' periods of exclusive jurisdiction have expired.

13.    Prior to January 1, 2015, there were several different job titles that Ryder employees could be assigned, with different operational tasks.  Coup, specifically, was assigned to janitorial responsibilities. She was not required to enter long, dark enclosed spaces.

14.    On January 1, 2015, a new Union Collective Bargaining Agreement ("CBA") became effective.  Under this CBA, various job titles, including Coup's, were consolidated under the title "Warehouse Operator."

15.    In January 2015, Ryder Management informed Coup that she would now also have to be able to perform all the duties and tasks of all the Warehouse Operator positions, including loading and unloading the trailers.

16.    Coup attempted to perform these duties and tasks; however, due to her disability, she suffered and reported to Ryder repeated bouts of nausea, vomiting, panic, lightheadedness, and other symptoms of her disability when attempting to perform tasks inside the trailers.

17.    The only task that Coup was unable to perform under the Warehouse Operator position was actually entering the trailers when loading/unloading as it

4

was the only task that required entering long, dark enclosed spaces. She was able fully and satisfactorily to perform all other duties, tasks and requirements of her position.

18.     There were other Warehouse Operators whose primary duties, as opposed to Coup's janitorial duties, included working in the trailers.

19.     Prior to January 2015, Coup was never required to work in trailers.

20.     Even if Coup did not have a disability, in the normal course of business, there were and are rare occasions when Coup, due to seniority and other factors, may have been "required" to work in the trailers.

21.     There were no other Warehouse Operators who were capable, qualified, and/or trained to perform all of the duties under the Warehouse Operator position.

22.     On or about February 20, 2015, Coup submitted to Ryder's Human Resources Department a Request for Reasonable Accommodation completed by Coup and her physician.

23.     Thereafter, for a period of time, Ryder accommodated Coup's disability.

24.     However, on or about August 24, 2015, Coup was called into the Human Resources Department and told that the new CBA superseded the

Americans with Disabilities Act, that she would have to be able to perform all duties and tasks of all Warehouse Operator positions, and it was suggested that the only way she would be able to keep her position was to go on medication. Coup continued to request accommodation for her disability.

25.    Coup continued working and, for a period of time, Ryder did not pursue the issue nor require Coup to perform tasks inside the trailers.

26.    Coup provided Human Resources with an October 9, 2015 note from her physician describing her disability, and that medication was not a viable option for Coup's disability.

27.    On November 2, 2015, Coup was terminated by Ryder.

28.    Ironically, on November 16, 2015, Ryder's HR Operations sent a letter to "All Employees," including Coup, informing the employees that Ryder, as a federal contractor, is subject to "certain federal laws and regulations pertaining to equal employment and affirmative action for individuals with disabilities" requiring Ryder "to invite all employees to voluntarily disclose their disability status at least once every five years, beginning in 2015," and providing a form to do so.  The letter also states: "It is Ryder's policy to provide reasonable

accommodations to employees in accordance with the [ADA]. If you believe that you need an accommodation to perform the essential duties of your job, please contact your Human Resources Manager."

29.    Ryder's Employee Handbook also provides that Ryder is an Equal Opportunity Employer, and will provide reasonable accommodations for employees with disabilities.

30.    Working in the long, dark enclosed spaces such as the trailers was not an essential function of Coup's job.

31.    Other employees, who were not qualified, capable and/or trained to perform all of the duties of the Warehouse Operator position, were not terminated.

32.    Ryder had and could reasonably accommodate Coup's disability but ultimately failed and refused to do so.

33.    Ryder failed and refused to engage in a reasonable interactive process with Coup and the Union regarding a reasonable accommodation for Coup's disability.

34.    Ryder failed and refused to provide the reasonable accommodation requested.

35.    A substantial, motivating or determinative factor in Ryder's above described actions and failures and refusals to act was Coup's disability, history of disability, and/or Ryder's regarding Coup as having a disability.

36.    Ryder acted with intent, and/or engaged in the unlawful practices maliciously, willfully, in bad faith, or with reckless disregard and indifference to Coup' rights.

37.    As a result of Ryder's conduct, Coup has suffered lost wages and benefits, lost future wages and benefits, humiliation, emotional distress, and such other damages as may become apparent.

## COUNT I

38.    Paragraphs 1 through 37 are incorporated herein by reference as though fully set forth.

39.    Ryder violated the ADA by failing and refusing to allow Coup her reasonable accommodations, failing and refusing to enter into meaningful discussion or process regarding accommodations, and by terminating Coup.

40.    Coup seeks all rights and remedies to which she is entitled pursuant to the ADA, including compensatory and punitive damages, declaratory and

injunctive relief, and attorney's fees and costs.

WHEREFORE, Coup respectfully prays This Honorable Court enter judgment in her favor, and award her damages for lost wages and benefits, lost future wages and benefits, humiliation, emotional distress, punitive damages, declaratory and injunctive relief, attorney's fees and costs, and such other relief as is appropriate. Plaintiff demands a jury trial.

### COUNT II

41.   Paragraphs 1 through 40 are incorporated herein by reference as though fully set forth.

42.   Ryder violated the PHRA by failing and refusing to allow Coup her reasonable accommodations, failing and refusing to enter into meaningful discussion or process regarding accommodations, and by terminating Coup.

43.   Coup seeks all rights and remedies to which she is entitled pursuant to the PHRA, including compensatory and punitive damages, declaratory and injunctive relief, and attorney's fees and costs.

WHEREFORE, Coup respectfully prays This Honorable Court enter judgment in her favor, and award her damages for lost wages and benefits, lost future wages and benefits, humiliation, emotional distress, declaratory and injunctive

relief, attorney's fees and costs, and such other relief as is appropriate.  Plaintiff

demands a jury trial.

RIEDERS, TRAVIS, HUMPHREY,
WATERS & DOHRMANN

S/ Jeffrey C. Dohrmann

Jeffrey C. Dohrmann, Esquire
Attorney for Plaintiff
161 West Third Street
Williamsport, PA 17701
Bar No. PA 68870
Tel: (570) 323-8711
Fax: (570) 323-4192
E-Mail: jdohrmann@riederstravis.com